```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE
```

David Johnson,
    Plaintiff

    v.                                              Case No. 12-cv-032-SM
                                                    Opinion No. 2013 DNH 140
Weare Police Department;
Town of Weare, New Hampshire; and
Officer Frank Jones,
    Defendants


## O R D E R

On September 22, 2011, members of the Weare Police Department arrested the plaintiff, David Johnson, and charged him with driving after his license had been revoked and operating a motor vehicle with a suspended registration.  Following a trial, Johnson was convicted of both charges.  He did not appeal that conviction, which is now final.  He brings this action seeking $5 Million in damages, asserting that the defendants violated his constitutionally protected rights and committed various common law torts.

The only individually named defendant in Johnson's complaint - Officer Frank Jones - moves for summary judgment, asserting that he is entitled to judgment as a matter of law with regard to each of Johnson's claims.  The municipal defendants - the Town and its police department - have filed a separate motion for

summary judgment. For the reasons stated, defendants' motions are granted.

**Standard of Review**

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

This case is somewhat atypical in that Johnson has failed to object to either of the pending motions for summary judgment. Accordingly, the court accepts as admitted the factual statements recited in those motions, as supported by the attached exhibits. See Local Rule 7.2(b)(2) ("All properly supported material facts set forth in the moving party's factual statement shall be deemed

admitted unless properly opposed by the adverse party."). See also Puerto Rico Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 7.2(b)(2), also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record. Given this root purpose, we have held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.") (citations omitted).

Importantly, however, Johnson's failure to object does not automatically entitle defendants to judgment in their favor. The court must still determine whether the uncontested facts presented by defendants, when viewed in the light most favorable to Johnson, entitle defendants to judgment as a matter of law. See, e.g., Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003).

**Background**

On September 22, 2011, two officers from the Weare Police Department drove to a home on Dustin Tavern Road to execute a warrant authorizing the arrest of the owner of that property. They placed the homeowner under arrest and took him into custody

without incident. During the course of the arrest, the officers learned that, although the homeowner was not carrying (or concealing) any weapons, he did have firearms in his home.

Once they returned to the police station, the officers discovered that there was an active domestic violence restraining order in place against the homeowner - an order that prohibited him from possessing any firearms. They discussed the matter with the homeowner and he agreed to allow the officers to return to his home, conduct a search for the weapons, and take them into police custody. During the course of his conversation with the officers, the homeowner stated that no one else was living at his home and no one had permission to be on his property.

At approximately 9:00 PM, a small group of Weare police officers - including the defendant, Officer Frank Jones - drove to the property to retrieve the weapons. As they approached the house, the officers saw a black Ford Ranger pickup truck that had not been on the property earlier. As they got closer to the vehicle, the officers saw the truck's occupant pop his head up and then drop back down out of sight. The officers suspected that the individual in the truck might be engaged in illegal activity, given his apparent attempt to conceal his presence. Additionally, the homeowner had told the officers that no one was

4

authorized to be on the property and the officers knew that there had been a string of burglaries in the area recently. The officers also knew that the homeowner was associated with members of "sovereign citizen" and "free state" groups and, of course, they were well aware of the fact that there were firearms on the property - all of which, say the officers, raised safety concerns.[1]

Accordingly, the officers decided to approach the vehicle, remove the occupant, and determine what he was doing on the property. They moved toward the vehicle with their service weapons drawn and in a "low ready" position. The truck's occupant, the plaintiff, Mr. Johnson, was ordered to get out of the truck and lay on the ground. Johnson complied; no physical force was necessary, nor was any applied, to obtain his cooperation. After patting Johnson down to ensure that he was not carrying any weapons, the officers allowed him to stand up and they asked him who he was and what he was doing on the

---

[1] The Court of Appeals for the Second Circuit has described the "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior" and noted that the "FBI has labeled the sovereign citizens a domestic terrorist group." United States v. Ulloa, 511 Fed. Appx. 105, 107 n.1 (2d Cir. 2013) (citing "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011), http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/september-2011/sovereign-citizens) (the "FBI Bulletin").

property. Johnson told the officers that he was a friend of the homeowner and that he had been sleeping in the truck when they arrived. The officers ran a check on Johnson's personal information and determined that both his driver's license and automobile registration were suspended. Although Johnson asserted that he did not need a driver's license or vehicle registration to drive on public roads, the officers were (understandably) unpersuaded.[2]

Given the likelihood that Johnson would simply drive away if he were not taken into custody, the lieutenant (and highest ranking officer) on the scene decided to place him under arrest. Because Johnson is a large man, one of the other officers handcuffed him using two sets of handcuffs linked together. Officer Jones then escorted Johnson to one of the police cruisers. Because of his size, Johnson had difficulty getting into the vehicle. So, Officer Jones allowed him to sit in the

---

[2] In his various filings, Johnson refers to himself as a "Free American Sovereign," and as "david: Johnson, Sui Juris, an Art 30 american sovereign of the New Hampshire citizenry." His expressed belief that he needs neither a driver's license nor a vehicle registration is consistent with those of the sovereign citizen movement. See The FBI Bulletin at 1 ("Some of their actions, although quirky, are not crimes. The offenses they do commit seem minor: They do not pay their taxes and regularly create false license plates, driver's licenses, and even currency. However, a closer look at sovereign citizens' more severe crimes, from financial scams to impersonating or threatening law enforcement officials, gives reason for concern.").

back seat with his legs outside the vehicle, while the remaining officers searched the home and retrieved the owner's firearms. According to the officers, no force (excessive or otherwise) was ever used against Johnson. In his affidavit, Officer Jones testified that:

> At no point during the detention or arrest process did I apply any force, excessive or otherwise, against Johnson. I did not handcuff Johnson. I did not use any of the various physical restraints or maneuvers normally utilized by the police (e.g., take downs, arm-bars, hand strikes, etc.) on Johnson. I did not strike Johnson, or apply any level of force to him, beyond simply taking him by the arm, walking him to the cruiser, and helping him into the back seat.

Affidavit of Officer Frank Jones (document no. 24-2) at para. 19.

Once the lieutenant made the decision to arrest Johnson, one of the other officers on the scene called for a tow truck to move Johnson's pickup truck. Consistent with the Weare Police Department's procedures, two officers conducted an inventory search of the vehicle. Meanwhile, Officer Jones continued to stand watch over Johnson at the open door of the cruiser. When it was time to transport Johnson to the police station, Jones assisted him into the back seat of the cruiser. Because of his large size, officers turned him onto his side and had him lay down in the back seat. The officers all unite in saying that they did this with the least amount of force and physical contact

possible and at no time did they take any action that was designed to cause Johnson any pain or discomfort.  Nothing in the record suggests that there was a struggle, or that Johnson was uncooperative, or that he resisted in any way.

Another officer then transported Johnson to the police station.  During that drive, Johnson complained of shoulder pain.  Accordingly, the officer notified the Weare Fire Department and asked that medical personnel meet them at the police department.  Once Johnson arrived at the police station, medical personnel evaluated him and, because he was complaining of chest and shoulder pain, they determined that he should go to the hospital.  At that point, Officer Jones had also arrived at the police station and he issued Johnson a summons to appear in court.  Johnson was then released from police custody and he was taken by ambulance to the hospital.  Subsequently, Johnson was convicted of operating a motor vehicle with a suspended license, and operating with a suspended registration.

Johnson contends that Weare police officers took him "hostage" on the night of September 22, stole his truck, and engaged in various acts of extortion and fraud.  He also says his Fourth Amendment rights were repeatedly violated and that he was the victim of various common law torts.  The only individually

named police officer in Johnson's complaint, however, is Jones. Jones was present when Johnson was taken into custody, but he played only a minor role in effecting and processing the arrest. Jones did not make the decision to charge or arrest Johnson, he did not handcuff Johnson, he did not make the decision to tow Johnson's vehicle, he did not search Johnson's vehicle, and he did not transport Johnson to the police station.

**Discussion**

Because Johnson is proceeding pro se, the Magistrate Judge conducted a preliminary review of his complaint and, what remain, are the following claims. Against Officer Jones, Johnson asserts claims for false arrest, excessive force, and unreasonable search and seizure - all in violation of the Fourth Amendment. See generally 42 U.S.C. § 1983. He also asserts state common law claims for assault and false arrest against Officer Jones, the Town of Weare, and the Weare Police Department (on a theory of respondeat superior). Based upon the undisputed facts of record, however, none of those claims can survive summary judgment.

I. Fourth Amendment Claims.

Johnson first claims that Officer Jones violated his constitutionally protected rights by arresting him without probable cause. Prior to Johnson's arrest, given the totality of

the circumstances, the officers were plainly justified in ordering Johnson to get out of his vehicle and then briefly detaining him while they determined who he was and what he was doing.  See generally Terry v. Ohio, 392 U.S. 1 (1968).  See also United States v. Sokolow, 490 U.S. 1, 7 (1989); Michigan v. Summers, 452 U.S. 692, 699-700 (1981).  After all, the property owner said no one would be on the property and no one was authorized to be there, Johnson appeared to be concealing himself after he saw the officers, it was night, and the area had experienced some burglaries.  The officers were fully justified in briefly investigating to determine whether criminal activity was afoot.

Once the officers learned that both Johnson's driver's license and vehicle registration had been suspended, they had probable cause to believe that he had (quite recently) illegally driven his pickup truck on public roads in the Town of Weare.  Their subsequent decision to arrest Johnson (and restrain him in handcuffs) - even in the absence of a warrant - was entirely consistent with the Fourth Amendment.  See, e.g., Robinson v. Cook, 706 F.3d 25, 33 (1st Cir. 2013) ("A warrantless arrest is permissible under the Fourth Amendment where there is probable cause, i.e., where reasonably trustworthy facts and circumstances

10

would enable a reasonably prudent person to believe that the arrestee has committed a crime.").

As to his claim that Officer Jones violated the Fourth Amendment by using excessive force against him, Johnson must point to facts from which a jury could plausibly conclude that Jones employed force that was unreasonable under the circumstances.[3] And, whether the force used to effect an arrest was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). Moreover, the "reasonableness" inquiry is an objective one, to be made "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Id. at 397. Here, beyond Officer Jones' statement that he guided Johnson by the arm to the police cruiser, there is no evidence that Jones used any force at all on Johnson - excessive or otherwise.

---

[3] "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989).

11

Finally, Johnson's claim that Officer Jones unconstitutionally searched and seized his truck must also fail. First, and perhaps most fundamentally, there is no evidence that Officer Jones made the decision to seize Johnson's truck, nor is there any evidence suggesting that Officer Jones participated in the inventory search of that vehicle.  But, even if there were such evidence in the record, neither the warrantless search of Johnson's truck, nor the seizure of that vehicle, ran afoul of the Fourth Amendment.  See Colorado v. Bertine, 479 U.S. 367, 371 (1987) "([I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment.  The policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause.") (citing Illinois v. Lafayette, 462 U.S. 640 (1983) and South Dakota v. Opperman, 428 U.S. 364 (1976)).

Moreover, the undisputed facts of record reveal that the officers who did perform the inventory search were following departmental policy, they were not acting in bad faith, and they were not performing the search solely in an effort to discover incriminating evidence against Johnson.  In that regard, this case is quite similar to Bertine, supra, in which the Supreme Court observed:

> In the present case, as in <u>Opperman</u> and <u>Lafayette</u>, there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in <u>Opperman</u> and <u>Lafayette</u> are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or others that may have been posed by the property.

<u>Bertine</u>, 479 U.S. at 372-73. <u>See also</u> <u>United States v. St. Pierre</u>, 488 F.3d 76, 79-80 (1st Cir. 2007).

Under the circumstances presented, the inventory search of Johnson's truck did not violate the Fourth Amendment.

II. <u>State Common Law Claims</u>.

For largely the same reasons, Johnson's common law claims against Officer Jones for assault and false arrest also fail. The record is simply devoid of any evidence suggesting that Officer Jones threatened (or attempted) to harm Johnson in any way. <u>See, e.g.</u>, <u>State v. Brough</u>, 112 N.H. 182, 185-186 (1972). (defining common law assault as the unlawful threat of bodily injury, coupled with the apparent ability to carry out that threat, sufficient to create a well-grounded and reasonable fear of personal injury). <u>See generally</u> 8 Richard B. McNamara, <u>N.H.</u>

13

Practice: Personal Injury Tort and Insurance Practice § 3.12 (3d Ed. 2003) ("Elements of Assault"). Jones is, therefore, entitled to judgment as a matter of law on Johnson's claim for common law assault. And, because the decision to arrest Johnson was plainly supported by probable cause, he lacks any viable claim for false arrest or false imprisonment. See, e.g., Ojo v. Lorenzo, 164 N.H. 717, 727 (2013) ("[P]robable cause is a defense to a claim for false imprisonment.").[4]

Finally, because Jones is not, as a matter of law, liable to Johnson for assault or false arrest, Johnson's respondeat superior claims against the Town of Weare and its police department necessarily fail. See generally Pierson v. Hubbard, 147 N.H. 760, 766 (2002).

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' legal memoranda, defendants' motions for summary judgment (documents no. 24 and 26) are granted.

---

[4] In New Hampshire "false arrest" and "false imprisonment" are synonymous. See, e.g., Hickox v. J. B. Morin Agency, 110 N.H. 438, 441 (1970) ("'False imprisonment' is often spoken of as 'false arrest' without violence to the definition of the tort.").

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 23, 2013

cc: David Johnson, pro se
    Charles P. Bauer, Esq.
    Andrew B. Livernois, Esq.